Mr. Green, whenever you're ready. May it please the Court, my name is Jonathan Green, and I represent the petitioner Svetlana Kuusk. Ms. Kuusk asked me to let you know that she wanted to be here today, but she has a two-week-old baby boy, and the doctor doesn't want her traveling yet. Your Honors, this is an appeal from the Board of Immigration Appeals. This appeal challenges the Board's decision to deny consideration of a motion to reopen filed after the 90-day deadline. The facts are particularly important to this case. Ms. Kuusk originally sought asylum and was ordered removed by the Immigration Court. That decision was appealed to the Board of Immigration Appeals. While that appeal was pending, Ms. Kuusk married Del Goff, a U.S. citizen. That was on September 24, 2011. Ms. Kuusk made an Infopass appointment with USCIS in Baltimore and went there in person on October 18, 2011. And the USCIS officer there explained to her that she could file for a green card directly with USCIS based on her marriage to a U.S. citizen. She filed a petition for that on November 16, was received on November 23. On December 15, the Immigration Service received her application to adjust status. But meanwhile, the Board had decided to deny her appeal. Was the USCIS aware of this parallel proceeding with the BIA when they gave her that advice? Ms., I believe so. I believe according to the affidavit, Ms. Kuusk had indicated that there had been a case before the Board and the USCIS officer had said, you're supposed to file with us. So that was essentially erroneous information provided by the government. Well, I don't, I'm not sure if it's erroneous. I guess you ultimately have to proceed through both fora. But was there an affirmative statement along the lines of, don't worry about the BIA, you're safe with us, or something like that? Your Honors, I believe that the USCIS officer had said that the procedure that she had to follow was to file both the application to adjust status and the permanent resident petition with USCIS. That's incorrect because adjustment of status can only occur through the Board once jurisdiction is vested with the Department of Justice. So Ms. Kuusk followed along with what the USCIS officer had said to do and filed with USCIS. Unbeknownst to her, that wasn't the correct procedure. And then, of course, she got confirmation essentially from USCIS that what she was doing was appropriate because they received her petitions, they sent her a receipt notice, they sent her a fingerprint notice. Well, let me ask you this, but she's also getting advice from her lawyer and her lawyer is telling her, look, you know, this is a really complicated area of the law. I understand what you're doing, but you really can't miss this deadline with BIA. Wouldn't a reasonably prudent person try to figure out what's going on here, even if, in fact, she believed somehow that the USCIS officer had disabused her of any notion that she had to continue to proceed through the BIA? Your Honor, I believe that what happened is that Ms. Kuusk has essentially sent an email to her attorney saying, you know, I've gotten married to a U.S. citizen, now I believe I'm eligible to pursue permanent residence. She said, actually, I'm actually planning on filing papers now through marriage. About three hours later, her attorney responded with an email saying, in key part, remember that for immigrants and proceedings, getting a marriage green card is complicated. Also, the USCIS will not accept marriage petitions and do not ask for a bona fide marriage exemption. The attorney also says in the email, please know that you need to file a motion to reopen your case before the BIA within 90 days of the final, its final decision. He says, of the final, its final decision. The deadline is firm. You do not meet it. Nothing can be done. Don't mess around. Be sure you do everything right. My charge for such cases is, and he goes on to talk about the fees. But the attorney never explains to her any kind of connection between a motion to reopen and adjustment of status. He just says, oh, you know, when your case is denied, you've got to file a motion to reopen. Ms. Kusk got other information from a USCIS officer. Now, I think there's some context that might be important here. Ms. Kusk's attorney had made a serious error in the asylum case below. The asylum judge essentially said, excuse me, but you have not really made a case that you deserve asylum based on your country of citizenship, just based on the country where you resided, Estonia. But she's a Russian citizen. Her attorney never made any case on the record for that. And so her asylum claim was denied. So the confidence that Ms. Kusk has in her attorney isn't very strong to begin with. Then her attorney sends her an email, doesn't connect the dots here for her. Basically says, you've got to file a motion to reopen, but doesn't say why. In fact, adjustment of status is never discussed. What would happen if the case was reopened before the BIA? What would she argue that would make them change their mind or reverse what happened below? Well, what Ms. Kusk was seeking to do was essentially to have her case reopened to be able to seek permanent residence, a green card based on marriage to a U.S. citizen. It's actually one of those classic cases for a motion to reopen. Do that before the BIA? She filed the motion to reopen before the BIA, Your Honor, yes. And the BIA said no. So she can proceed on that on two different fronts? I'm sorry, Your Honor? She can proceed on that before the USIC, or I may have the letters wrong. USCIS, Your Honor. And the BIA? She can get it either way? Well, actually, Your Honor, the particular problem is that jurisdiction only vests either with USCIS Homeland Security or with the Board of Immigration Appeals and the Immigration Court through the Department of Justice. When you want to adjust status, you can only go to one or the other, except for certain cases involving arriving aliens, which doesn't apply here. So essentially, once the Immigration Court gets a notice to appear and they get jurisdiction, the ability for USCIS to adjust status is gone. It evaporates as a matter of law. So only adjustment can happen now with the Immigration Court and the Board of Immigration Appeals. The USCIS officer never told Ms. Koos that. And, in fact, USCIS, Department of Homeland Security, knew that she had a case before the BIA. Because Homeland Security's attorney represents the government before the BIA. But instead of telling her no at the Infopass appointment, they said, go ahead and do that. And she files her case. And they send her the receipt notice. They do fingerprinting. She actually gets her check canceled. They send her an interview notice to come in for an examination. They give her four or five different indications that everything is fine. And only when she shows up at the interview for the first time, they say, sorry, you're too late. You missed your deadline by a couple weeks now. No luck for you. No soup for you, ma'am. So instead, what happens? She contacts her old attorney, who says, oh, my gosh, we have to file a motion to reopen. Didn't tell you about adjustment of status, but now I'm telling you. And he goes ahead and does it in a space of just six weeks. He acts as quickly as possible. And six weeks later, on May 9, the motion to reopen is filed. Now, the motion to reopen is effectively seven or eight weeks past the 90-day deadline. So the Board of Immigration Appeals says, well, you missed your deadline. Sorry. You know, good luck going home back to Estonia. Sorry you married a U.S. citizen. That's OK. The family is going to be split up. But the bottom line here is that the board could have recognized equitable tolling and could have granted that ability for Ms. Koos to be able to seek permanent residence in this case, but didn't do so. Well, if the court recognizes equitable tolling, which of the many standards should it apply? I mean, you set them all out very nicely in your brief. My question is, which one should we apply and why? I appreciate your Honor asking that question, because I have to actually make a correction to the briefs, because since the briefs were filed, one more circuit has joined the bandwagon and recognized equitable tolling. The 11th Circuit, in the case of Avila Santoyo v. U.S. Attorney General, I don't have an official citation. It's docket number 11-114941, 2013 Westlaw 1499419, from April 4, 2013, overruled its prior decision in the Abdi case, saying there shouldn't be equitable tolling, and now recognizes equitable tolling. OK. So now we have all these circuits. Which standard and why? Certainly, Your Honor. So we have this sort of spectrum. On the one hand, we have the Eighth Circuit, which says, just show that you have some entitlement to the relief that you're seeking, prima facie entitlement. That's the Hernandez case. That's a very low threshold. At the far end of this, we have sort of used to show some due diligence plus something else. In the middle, it's sort of a due diligence standard. Frankly, to me, this case mirrors what happened in the Ninth Circuit, in the Socop-Gonzalez case. And there, in the Ninth Circuit, they said, look, you have to show some due diligence that you have been pursuing the remedies that you're entitled to. But you should also show that something's happened that created a problem for you. Personally, I like due diligence as a standard. I think people ought to still be held to some responsibility, not just merely to show that you're entitled to the relief. I mean, what kind of threshold is that? Let's be fair here. So there should be some burden on people who want to seek relief. And they should show some diligence in being able to do that. Due diligence has been accepted in the Sixth Circuit. It's also as part of the Second Circuit's determination, the Ninth Circuit, the Tenth Circuit. The First Circuit hasn't really said that there should be equitable tolling because it denied it in the case that it had in the Nevis-Beholder case. But it said, if we're going to apply equitable tolling, we are going to require due diligence plus some other circumstances. So with respect to the standard then, your argument appears to be that her filing with the USCIS was evidence of due diligence. She was effectively trying to preserve her rights. But this case is a little bit different because we've got this attorney working behind the scenes, and you're saying, well, he's a lousy lawyer. That's why he shouldn't have paid attention to him. Is that going to get you over the hump? Your Honor, you've raised, I think, two particular questions, and I'd like to sort of unpack them if you'll give me the opportunity. I don't think the due diligence applies to what happens during the actual time deadline. It's about what happens after that 90 days expires. What do you do once your deadline actually expires? And what happened here is, once she found out, once she was put on notice that, by the way, what you did didn't preserve your rights. Oh, I don't think you're right about that. Yeah, I don't agree with that. So maybe start over on that. I think the due diligence has to be before the time limit. Well, either way, in this case, Ms. Koos did indeed pursue what she believed was correct to be able to obtain permanent residence. She followed the advice of what a government officer told her to do. Her attorney had made mistakes. So she turned to a government officer and did this on her own, thinking, OK, well, I'm So she was doing what she thought was correct, what had been told to her by the government officer. And the government had so many opportunities to stop her along the way and say, no, no, this is not what you're supposed to do. At the Infopass appointment, they could have rejected her application and sent it back and said, sorry, this isn't going to work. You have to go back to the Board of Immigration Appeals. The government had that opportunity, didn't take the opportunity. So she was actually pursuing due diligence at that time as well, whether you want to do it before or after. Because she's not represented. What if she had been represented by a lawyer at the USCIS and the same set of facts are presented? What's the result there? Well, if she had been represented by an attorney and a USCIS officer had given erroneous information and the attorney then followed the erroneous information, making a complete error of law in the case, then she would have a claim for ineffective assistance of counsel. We've got cases all across the circuits that say that that is a perfect reason to actually create equitable tolling in these circumstances. We have cases in this circuit where somebody misses the filing deadline by one day and they're facing a capital case. I think you misread the law in this circuit. No, but Your Honor, I'm talking about in the immigration cases that have been reviewed around the country in the other circuits. I'm only talking about the immigration cases. And certainly in the immigration context, ineffective assistance of counsel has been held as a reason to actually toll the filing deadline for this kind of case. So you think what she has to demonstrate is due diligence plus something else? I think she has to demonstrate that she acted with due diligence. Obviously, there has to be some reason why what she did wasn't enough. I mean, it isn't simply enough to say, well, I was working on my case, Your Honor. I'm acting diligently to prepare all my paperwork. There has to be something else going on here that actually makes that a reason to apply equitable tolling. Do you think we should apply the standard from Harris v. Hutchinson? That's the habeas case. Your Honor, that's a really good question here. This Court has applied Harris before. The problem, Your Honor, is that the Board doesn't understand Harris. The Board didn't go to the holding of Harris. Harris says, okay, fine. It says extraordinary circumstance or something like that. Wrongful conduct. Wrongful conduct or extraordinary circumstances beyond the plaintiff's control make it impossible to file the claims on time. Well, the actual standard says because the circumstance is external to a party's conduct, it's unconscionable to enforce limitations and gross injustice results. That's the holding of Harris. The Board says, no, we think Harris is really if the government prevented her and then events beyond her control made it impossible. This language about impossibility, they're citing to the Alvarez-Machain case out of the Ninth Circuit. That's not even the holding of the Alvarez case. The Alvarez case is citing to another case that isn't the holding from either. So this sort of impossibility is essentially, it's either dicta or just commentary, but it's never been the holding of any case here. So how do you articulate what the plus is in the equitable tolling standard, the thing beyond due diligence? Well, I do like the idea, Your Honor, that there are circumstances external to the party's conduct or there are other circumstances that essentially create a problem in the ability to be able to file timely. The Seventh Circuit says, in a case where the petitioner could not reasonably have been expected to file earlier. That's an instructive case to actually look at because there, in that circumstance, that sort of mirrors what we have here. She couldn't reasonably be expected to file earlier because she's following what the government is telling her to actually do. And in the Ninth Circuit in Socop Gonzalez, not only do they look at due diligence, but they say, okay, she was unable to obtain vital information bearing on the claim. So there has to be, I think, some sort of external information that has a bearing on the actual claim and the person is also exercising some sort of due diligence. There are lower standards. Your Honor, I see that my time has run out, but I will certainly address anything else on rebuttal. Thank you. Good morning, Your Honors. May it please the Court. My name is Nicole Murley and I'm here today on behalf of the Attorney General. This is an immigration case where the Board appropriately exercised its discretion in denying Petitioner's unquestionably untimely motion to reopen where Petitioner failed to demonstrate extraordinary circumstances beyond her control sufficient to justify that equitable tolling was warranted of the 90-day time limit. So, initially, you agree with the appellant in this case that the Fourth Circuit should formally recognize equitable tolling. Is that correct? The Board has not addressed in a precedential decision whether equitable tolling applies to the 90-day time limit. What the Board does is it looks to the circuit in which the venue of the immigration proceedings took place. It assumes that it applied in this case and it examined it and analyzed the motion to reopen under the Fourth Circuit's circuit precedent. Well, every circuit must have some equitable tolling rule. So that would seem to me to mean that the Board does recognize that there can be equitable tolling. Yes, and the Board has not said that equitable tolling does not apply. And there's unpublished decisions in this circuit where the Board has found that equitable tolling was not warranted using the Harris decision and the holding in the Harris decision on equitable tolling. But just to be clear, you weren't being asked about the standard in the first question. You were just asked whether the Board recognizes that there can be equitable tolling. Yes, it does. It assumes so. Here, Petitioner was told on multiple occasions by her privately retained counsel the proper procedures for filing a motion to reopen. Petitioner was placed in proceedings when she filed her asylum application. How is that intended to disabuse her of the notion that proceeding with the USCIS and particularly in light of the acceptance of that application by the USCIS and apparent processing of the application, how does the attorney's warnings factor into that? Petitioner had to do both. In order to file a motion to reopen with the Board, the motion must submit evidence of the underlying relief sought. In this case, in order to adjust, Petitioner had to submit with her motion some evidence of the relief that she was seeking. And in this case, it was adjustment of status based on the I-130 visa application that her husband filed on her behalf. The I-130 had to be filed with USCIS. She could not file the I-130 with the Board of Immigration Appeals. Your position is that USCIS didn't mislead her? There's no record evidence that they mislead her. They told her to file with the USCIS. She had to file with the USCIS. Correct. And when she got the approved I-130, she filed the motion to reopen. She could have filed evidence, even before the I-130 was approved, the motion could contain evidence that she had filed that or that was relief that she was seeking. So she was asking the Board to reopen her case to no longer pursue asylum or to pursue asylum plus the adjustment. Because she was in proceedings for asylum. She was not in proceedings based on her marriage, which did not occur until September 2011. So in order to, she had to go to the Board and ask them to reopen based on this new relief. And on October 18, 2011 is when Petitioner went to her appointment with the immigration officer, where she claims she received erroneous advice. Well, let me just ask you a question. I think what the Court is called upon to do in this case, since you agree that equitable tolling applies, is to articulate the standard that should be applied. And what standard is it that you think we should apply? Which of these many articulations of it should the Fourth Circuit adopt? The standard here is whether the Board abused its discretion in denying Petitioner's untimely motion to reopen. Well, I understand that, but we have to say what the test is for equitable tolling. Here, would the Board look to this Circuit's case law, which is Harris and it's expounded in Chau? Do you think Harris is the right test to use in equitable tolling in this kind of case? Or should we use some of the more relaxed standards like your opponent advocates? I think the Board didn't abuse its discretion in applying this Circuit's case law. Here, the standard was extraordinary circumstances beyond the claimant's control. In our published cases, I think that's a habeas standard and not an immigration standard. There are three unpublished decisions where, in the immigration context, where the Board denies motion to reopen, where the Court cites the Harris decision in its analysis and found the Board did not abuse its discretion in applying that standard to the denial of a untimely motion to reopen and finding that equitable tolling of the deadline was not warranted. Let me ask you this in a different way. Does any Circuit apply a special equitable standard for equitable tolling when they're dealing with immigration cases? My perusal had been everybody applies their own... The standards are all worded a little differently. They're all different in and out of the Circuit. They apply their own Circuit law to the immigration cases. Has anybody fashioned a special immigration equitable tolling standard? Outside of normal due diligence and outside the case law in their Circuit, no. Each Court... What do you mean, outside? What does that mean? I'm sorry. I'm just asking you if any Circuit has fashioned a special equitable tolling rule in immigration cases. To my knowledge, no. They apply the standards of the case law in their Circuits and they've adopted them in the immigration context. But I'm not sure that it's different than the case law of their own... their equitable tolling case law in other contexts. I thought you said, to your knowledge, it wasn't any different than... Right. Let me ask you one other question. I'm not sure what the government's position on this is. Was this woman misled by a government official? The record does not support that. We do not believe that she was misled. In here, she was... She says she could file for a marriage-based green card directly with USCIS based on her marriage to a U.S. citizen. Is that an error? She had to file the visa application with USCIS. What's your position is that what they told her was true but they didn't tell her everything? Is that your position? No, I don't know what they told her. I mean, I know what she says they told her. I don't know... They told her that she could file the I-130 with them and the adjustment application could be filed with them. There's nothing in the regulations that that was improper. But she also, because she was in immigration proceedings, because she was in removal proceedings, had to pursue a motion to reopen with the board. And on October 25th, three days or a couple days after the appointment with her immigration officer, her attorney told her that she had to file. I do understand your reliance on what her attorney said, and that's fine, and that's your argument. But what I'm really trying to get at here is whether she was ever misled, because it's crucial to their case that she was misled by a government employee. And if the government employee didn't mislead her, didn't tell her something that was untrue, but just didn't give her all the information, the case, it seems to me, is a little different. So I'm trying to tease out from you what this record shows with respect to what the government employee said to her. Do you understand? I understand, but the record doesn't contain an affidavit from the government employee. And it doesn't contain... What it has is Ms. Cusk's statement that she thought she was doing the right thing because they told her that her application would be returned to her if there was something wrong with it. And counsel said today that they weren't... that he believes... he wasn't sure exactly what they told her. It's her statement that she was... relied on him telling her that she needed to file those applications, but she doesn't proffer any evidence as to why she didn't follow up with her attorney, why she didn't ask about the motion to reopen. Well, so then the record shows that the person at ICE told her, keep moving through us with your marriage issue. Is that right? Well, what should she have done? Should she have proceeded on both fronts? I think that the proper procedure would be to file the I-130, get the approved I-130, and then file the motion to reopen with the board. So you did have to proceed on both fronts? Yes. Well, see that... Then what she was told wasn't, as I say, she wasn't misled, or she wasn't told anything that was untrue. She did have to proceed on both fronts. She wasn't told about the second front by the government. She was told by her lawyer, not by the government. And she was told by her attorney before she'd ever filed, before her husband actually filed the I-130, and before she filed the I-485. She was told on October 25th by her attorney that, and that was before the board's decision in her case, so before the time period for filing a motion to reopen even began to run, she had been informed. She could have filed while her case was still pending before the board. So while she's litigating before the board this issue about whether she will be mistreated because she's Estonian, she could say, oh, and she could come back at the appellate stage and say, oh, by the way, I'm married to an American now? Is that an... I don't know. I'm just a poor district judge. Unfortunately, we don't have to deal with this. There's actually a board decision. It's called Matter of Valarde. It's a 2002 BIA decision which outlines the procedure for somebody who's in proceedings who is seeking to adjust. And it talks about whether the board would grant a motion to reopen, or it has the authority to grant a motion to reopen in those situations. And what the board would do is if she filed the... she would have to file a motion to reopen even before the board had issued its decision in her removal proceedings. The board would construe that motion to reopen as a motion to remand the case to the immigration judge for the immigration judge to then adjudicate her adjustment. Because ultimately... Is she supposed to understand all this? She had privately retained counsel who... Yeah. ...gave her this advice. Is it your position that if we decide that the Harris standard is the correct standard for equitable tolling, that that's the standard that the BIA applied and it's in their discretion so we should affirm their judgment? Is that correct? Our position is that the board cannot be said to abuse its discretion where it looks to the case law of this circuit... And it uses the right standard. ...and uses the standard that is employed by this circuit to determine whether a petitioner demonstrated the extraordinary circumstances to warrant equitable tolling. Here, you have a situation where she was informed multiple times about the proper procedure. Okay, so why do we borrow the habeas standard and apply it in immigration cases? Why? Why not just say due diligence? Or go to what they say in the Third Circuit, which is fraud? Why the habeas standard? Here, what happens is the board looks to the circuit law. That's what the board did here. If the court feels that the board should have used a different standard or a different court's equitable tolling standard, the proper procedure then would be to remand for the board to address that in the first instance. I think the issue that this court needs to decide is what the standard is. And you think we should use the habeas standard. Why? I think that the board did not abuse its discretion in using this court's habeas standard. Okay, but there's millions of case law about any error of laws and abuse of discretion. So you'd have to ultimately get to the issue. I thought your answer was there is no special standard in these immigration cases. No court has recognized that. That is true. But each circuit has a different standard for equitable tolling. They've articulated, they've used different words. Yes. This court has mentioned due diligence in the Chau case. The quote in Chau is, equitable tolling is not appropriate, however, where the claimant failed to exercise due diligence in preserving his legal rights, citing the Irwin case. That is on page 283 of the Chau decision, which is cited in the brief. It's not a completely different standard. It's a different articulation among the circuits. And the board, having not spoken in the first instance assumes equitable tolling applies in these situations, looks to the circuit in which the venue of the immigration proceedings was held, and addresses it in that context. And that cannot be said to be an abuse of the board's discretion in denying a motion to reopen or finding that equitable tolling doesn't apply. What the... Frankly, this question has nothing to do with the merits, but I'm just curious, what is it about this case that has got the government's dander up, at least on the face of this record? This appears to be someone who... Someone should exercise their discretion to grant relief. Is it just a matter of standing on principle that the BIA exercise its discretion, and that's the end of the matter? I'm sorry, I'm not sure I understand. I guess what I'm asking is, why is the government exercising, utilizing its resources to defend this particular case, which on the face of the record, there's no evidence of a sham merits that I can tell, no other evidence to show that this person would not have been entitled to relief but for this missing of a deadline. What is it about this case that's got the government so bent out of shape? Well... And I know you're here on behalf of the government defending a decision of the BIA. I'm not criticizing you personally. I'm just trying to figure out, what is it about this case that has got the government so excited? The petitioner's motion was untimely filed, and she filed it past the 90-day deadline. There are... Does she have any other avenue of relief if we deny relief today? Petitioner could ask the Department of Homeland Security to join in a motion to reopen. I believe that that is an avenue that they are going to proceed. They have not yet asked the department to file. She could ask the department for prosecutorial discretion, which would, if granted, would administratively close her case. The department has equitable relief in the form of deferred action or deferred removal where you ask the department to not pursue removal. And the other option is for petitioner to return to her home country and apply for a visa through the consular and apply for a waiver because she now has a removal order against her. So she would have to apply for a waiver of, I believe she's barred for 5 or 10 years from reentry. Does anybody ever get relief under those first things that you were talking about? Not going back to the home country, but the other things? Prosecutorial discretion. I've had cases where aliens have been granted prosecutorial discretion. But the government does not initiate that. That has to be something that petitioner's counsel would go to the department and ask. I can't speak to... No, I understand. I'm just asking along the same lines. And I appreciate the response. Your Honors, I actually wish I had been here during the question that you offered to my counsel here because I think there are questions here that can be addressed and explained and give the Court some particular insight. I am here and now I've got a chance for rebuttal and I appreciate that. I think I would first call the Court's attention to the Joint Appendix, page 25 because there's been some question about, factually, was there any misleading of Ms. Kusk by USCIS? In the affidavit, there's a chronology that Ms. Kusk lays out and what she says in particular is that she made an infopass appointment to see how my adjustment of status based on marriage to a U.S. citizen. I met with a middle-aged female USCIS officer. I told the officer I had lost my asylum case before the immigration court that it was now pending on appeal. I then asked if I could file forms I-130 and I-45 to adjust my status. The officer told me I could file the I-130 and I-45 with the USCIS. She told me if anything was wrong, the filings would be rejected and I would be notified. I remember her specifically saying you can send your applications and if anything is wrong, you will find out. Those are the forms you need to file in seeking an adjustment of status based on marriage to a U.S. citizen. Well, something was wrong and she did find out, but not in the manner that you would have hoped. But they didn't reject the filings. Didn't she need to apply for the green card with USCIS in order to get a marriage-based adjustment of status with BIA? She had to go on two tracks. Actually, Your Honors, let me clear this up. It's a three-step process. Please forgive me. I teach a little immigration law periodically and this is one of the things I have to impress upon my students because it is very confusing. There's a lot of different details here. These are the three steps when someone is in immigration court proceedings. As counsel Ms. Murley indicated, the first step is filing an I-130 petition with USCIS. Only USCIS deals with the I-130 petition. That's a petition for alien relative. That's the precondition to get the green card. Once that's approved, step two, when you're in immigration court proceedings before the board, you file a motion to reopen. Along with the motion to reopen, you show evidence of what your step three is. That's the adjustment of status application. Steps two and three have to be done, not with USCIS, but with the board or immigration court. USCIS has lost jurisdiction, so the court gets the motion to reopen step two. If they say it's granted, you go to step three, you file for adjustment of status. You don't file for adjustment of status with USCIS once you're in immigration court proceedings. The problem in this case, of course, is that her counsel never addressed step three with her. These emails don't talk about adjustment of status. He just says you file a motion to reopen. She's thinking, oh, I file for adjustment of... The officer told me I file for adjustment of status with USCIS. The attorney never says anything about that to her. He just says you file a motion to reopen. Why? Well, to pursue, you know, trying to get your case done. Who knows? But the attorney never, ever tells her you cannot do adjustment of status before USCIS. But what do you do with the advice to file a motion to reopen? You've got to do something with respect to that, and she does nothing. Well, but the motion to reopen is for what purpose? She was denied asylum. You're going to try to reopen the denial of the asylum claim? She keeps hitting her head against the wall on that case. He never says the purpose of the motion to reopen is to seek adjustment of status. He never, ever tells her that. It's not in these emails. So because he isn't telling her to actually do that, she's thinking, I'm following what the government is telling me to do to get adjustment of status. She only got information from one source on adjustment of status. That was the government. But she had told her attorney, you know, I'm now eligible for a green card based on marriage. And he never tells her, by the way, if you want to seek adjustment of status, it's got to be step three through the Board of Immigration Appeals. Don't go to USCIS. Doesn't tell her that. Well, in part, his representation ends at the board. He wasn't hiring to file for adjustment of status for her. He's just doing what he did at the board level. He sends her an email, if you want to hire me to do more, you pay me more money. That didn't work out so well the first time around. I think the court also ought to look at one other issue besides this. It's an important question, and that is should Harris be the standard in this particular case? I think it's important to look at what the Harris standard actually is. Because of circumstances external to a party's conduct, it's unconscionable to enforce limitations and gross injustice results. Harris doesn't actually say there should be due diligence. I mean, it's not even part of the Harris standard. It just says external circumstances. Circumstances external to the party's conduct. So I think due diligence is actually a little bit higher standard than what Harris wants. Harris just says, something's got to be going on outside of your own conduct and a bad result happens. The court wants to impose the lower standard of Harris in this case. That's great. But the Board of Immigration Appeals didn't understand Harris in this case. And I think having some clarity would be really helpful. Harris says only when the government has prevented you from doing something. Only when the government has acted wrongly. But that's not the Harris holding. If the court wants to say if there's some external circumstance that then has an impact on your ability to seek your relief, that's great. That can be a fine standard. The court thinks it should be somewhat higher. There should be some due diligence. I'm fine with that too, Your Honor. Harris articulates the second point as extraordinary circumstances beyond plaintiff's control made it impossible to file the claim. I don't see how that standard particularly helps your client. My time is up if I may respond to that one particular point. I think what Your Honor is referring to is a statement prior to the holding where Harris is citing from the Alvarez-Machain case. And the Alvarez-Machain case, that's not the holding of Alvarez-Machain. Alvarez-Machain is merely citing to another case that has come up with that concept out in the Ninth Circuit. It says the doctrine applies in two circumstances, two generally distinct kinds of situations. That's what the two are. Quoting the Ninth Circuit case, you're quite right. In fairness, I think if you read the rest of that paragraph, the last sentence identifies what the actual holding of Harris is. Any resort to equity must be reserved for those rare occasions where it's unconscionable to enforce the limitation period. Right. I apologize because I don't have the Harris case actually directly in front of me. You can take it to the bank if it's been quoted correctly. In that paragraph, Your Honors, it does say if there are circumstances external to a party's conduct, it's unconscionable to enforce limitations and gross injustice results. That's actually in that paragraph. That, I believe, is what the holding of Harris is. Not that the government has to do something that makes it impossible for you to do this. Although even that seemed to occur in this case. Is that what the BIA applied in this case? That latter part of that paragraph? No, the BIA didn't apply the holding out of Harris. The BIA said essentially delayed filing is acceptable only if the government prevented her or their events beyond her control made it impossible for her to actually file. I mean, impossibility is a pretty high standard, right? Thank you, Your Honors, so much for your time today. We'll ask the clerk to adjourn court and then we'll come down and greet the lawyers. This honorable court stands adjourned until tomorrow morning at 9.30. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Albert Diaz, John A. Gibney, Jr.